Miller v. Alexander.

| 13 | 497 |
|----|-----|
| 74 | 225 |

| 13 | 497 |
|----|-----|
| 82 | 652 |

JOHN F. MILLER v. LYMAN W. ALEXANDER AND OTHERS.

There can be no question that the Sheriff's deed, though incomplete, (wanting a seal,) and the return upon the execution, evidenced a sale of the land under the execution, and a purchase by the plaintiff.

It is the right of the Sheriff to correct a mistake in a levy, at any time before the return of the execution ; and in a collateral proceeding, after sale, an alteration will be presumed to be the correction of a mistake, and it will be presumed, in the absence of any evidence to the contrary, that the correction, if without date, was made before the execution was returned.

Difference as to presumptions respecting alterations of private and official instruments or documents.

The Deputy Sheriff being an officer known to the law, the signing of his name to a return, with the addition of his proper official designation, is sufficient, without the name of the High Sheriff.

It is not necessary that a levy be separately signed ; it is sufficient if the return, of which the levy is a part, be signed officially.

The defendant in execution, before sale, may, by express act, waive irregularities in the levy, advertisement, &c.

Where a levy was indorsed May 10th, 1844, to commence at the N. W. corner of a tract of land, and was altered thus " Tract to be offered to commence at the N. E. corner thereof," without date, and there was a letter from the defendant in execution, to the plaintiff's attorney, dated June 5th, 1844, agreeing in consideration of " your having granted my request to postpone the sale of my land advertised for the first Tuesday of this month," to waive all legal exceptions to the proceedings had on the execution, to ratify the levy as made, and that " the sale of land so levied upon as aforesaid, under said execution" might take place without appraisement on the first Tuesday in August next, without advertisement ; and the sale did take place on said first Tuesday in August, of the land commencing at the N. E. corner of the tract, it was held that the presumption, in the absence of any evidence to the contrary, was, that the letter referred to the levy as it had been altered or amended.

Error from Colorado. Action of trespass to try title, by the

plaintiff in error against the defendants in error. Both parties claimed under Ira R. Lewis. The plaintiff introduced in evidence the docket title of a judgment in the District Court of Colorado county against said Lewis, dated September 6th, 1843, and an execution issued thereon on the 8th May, 1844, to sell without appraisement. He then offered in connection, the Sheriff's return, the Sheriff's deed, and a letter from Ira R. Lewis.

The return indorsed on the execution was as follows:

Received the 10th day of May, 1844. Meritt Hutchins, Deputy. By virtue of the within execution I have levied on fourteen labors off of the Gilleland league of land, or so much of said tract as will satisfy the within execution, commencing at the N. W. corner. May the 10th day, 1844. R. H. Tobin, Sheriff C. C., by Meritt Hutchins, Deputy.

Tract to be offered to commence at N. E. corner thereof. M. Hutchins, Deputy Sheriff, C. C.

Purchased by Kidder Walker, agent for John F. Miller, at twenty-five cents per acre.

Satisfied in full. August the 9th day, 1844. R. H. Tobin, Sheriff C. C., by Meritt Hutchins, Deputy Sheriff C. C.

That portion of the return which reads as follows: " Tract to be offered, to commence at N. E. corner thereof," the Sheriff's deed and the letter from Lewis were excluded. The Sheriff's deed was for six hundred and forty acres and purported to be under the hand and seal of the Sheriff, using a scroll for seal; but no scroll was made. It was dated August 7th, 1844, and was recorded September 10th, 1844. It recited that the land had been advertised according to law, and purchased by Miller, the grantee, but did not say when advertised or sold. Lewis' letter was as follows:

Style of the execution. To K. Walker, Att'y for plaintiff. Dear Sir. In consideration of you having granted my request to postpone the sale of my land, advertised for the first Tuesday of this month, to satisfy the above cause, I hereby rectify (so in the transcript) the levy as made; I do hereby waive all

legal exceptions to the proceedings had on said execution, and do grant the privilege of the sale of said land, so levied upon as aforesaid, under said execution, on the first Tuesday of August next, without appraisement or advertisement, if you think proper, and I should not pay the plaintiff's claim on or before that time. Columbus, June 5th, 1844.

I. R. LEWIS.

The execution had an indorsement, as follows:

The Sheriff is hereby ordered to suspend the sale of the within property, until first Tuesday in August next.

K. WALKER, Att'y for plaintiff.

The petition contained the allegation that at the time of the levy Lewis owned 13 1-6 labors of the Gilleland league, taken off the west side of said league.

Verdict and judgment for defendants.

*G. W. Smith* and *Jones, Ballinger & Jones,* for plaintiff in error. That portion of the return excluded, was signed officially, for the officer showed by what authority he acted when he signed himself as "Deputy Sheriff of Colorado county."

The words added to the officer's name indicate clearly his official character. It was not necessary that the return should be signed "Tobin, Sheriff, by Hutchins, Deputy Sheriff."

The omission to sign the return officially was no more than an irregularity of the officer, which ought not to affect the title of a *bona fide* purchaser or invalidate a sale made by the officer. (Natchez v. Minor, 10 Smedes & M. 246; Webber v. Cox, 6 Monroe, 110; Brown v. Miller, 3 J. J. Marsh. 439; Hayden v. Dunlap, 3 Bibb, 216; Reardon v. Learney, 2 Id. 202; Coleman v. Trabue, Id. 518; Winslow v. Austin, 5 J. J. Marsh.)

II. An inspection of the original execution, with the return indorsed thereon, sent here by order of the District Court, will satisfy this Court that that portion of the return excluded was intended by the officer for nothing more than to correct the description of the land, contained in the first part of the recital of the levy. The officer had written the words North-West

instead of North-East, and he might with propriety have erased the miswritten words and interlined other words to correct the error in the description of the land, or he might have obliterated entirely the first description of the land and substituted another.

That portion of the return excluded will be regarded as tantamount to an erasure of the description of the land contained in the first part of the memorandum of the levy.

The officer had the right to amend the return at any time before it was filed in the Clerk's office.

In Welch v. Joy, 13 Pick. 477, the Court held "Until the "execution is actually deposited in the Clerk's office, the re-"turn does not become matter of record, and until then the "officer needs not the authority of the Court to make or amend "its return, till then it seems to be under his own control and "in his own power."

But objections to the return were obviated by a letter from Lewis, the defendant in execution and owner of the land in controversy, to the plaintiff in execution.

It may be urged by defendants in error that the letter referred to that part of the recital of levy, which describes the land as commencing at the North-West corner of the league, but it will be seen by the Court that that, on its face, is in no respect defective.

The description of the land levied on contained in the first part of the recital of the levy, is clear and distinct. The officer designated the place which was the commencement corner of the tract levied on, and the law fixed the boundaries of the tract.

III. The land described and conveyed in the deed from the Sheriff to the plaintiff was a tract of six hundred and forty acres off of the Gilleland league, commencing at the N. E. corner and the description in the deed followed the description contained in the recital of levy, and should not have been rejected.

But there are other reasons why the Sheriff's deed was im-

properly rejected. The plaintiff had in evidence the judgment of Perry, Adm'r, v. Lewis & Thatcher, the execution that issued on it, the Sheriff's indorsement that the execution had been satisfied in full; and to perfect his proof, to make out his case fully, it was only necessary to show a sale of the land in controversy to himself, under deed by virtue of the execution. (2 Tex. R. 225; 6 Gill & Johns. 303.)

In Jackson v. Steinbergh, 1 Johnson's Cases, 154, the Court say "But the Sheriff's return was not essential to the title of "the purchaser; that title was not created by nor dependent "on the return, but was derived from the previous sale, made by "the Sheriff, by virtue of his writ; it was sufficient for the pur-- "chaser, that the Sheriff had competent authority and sold "and executed a deed to him." See also case reported in 1 Johnson, 45, note.

In Cooper v. Galbraith, 3 Wash. C. C. R. 546, the Court said "The cases cited by plaintiff's counsel are full to the "point, that a purchaser under an execution, in ejectment "against the defendant in execution or one claiming under him, "need not show any other title than the judgment execution "and Sheriff's deed." (See also 1 Marshall, 217; 7 Iredell, 151; 3 Hill's S. C. R. 289; 2 Caine's Cases, 62; 5 Cowen, 269; 4 Wendell, 464; 1 Ala. R. 540; 4 Wendell, 585.)

*Harris & Pease*, for defendants in error. I. It is contended for the appellees that the Court committed no error in excluding the memorandum attached to the levy; for it will be seen by the indorsement on the execution, that this addition was not signed officially, that it must have been written at a time different from that at which the levy was indorsed; it is in a different handwriting, and that it bears no date. The levy is signed officially, it bears date, and it is an entirely different levy from that made in the other indorsement. Now, it is submitted that an unofficial act and an act without date should not, unexplained, be permitted to annul or even affect an act possessing these requisites. The acts of a Deputy must be in

the name of the principal or Sheriff, or they are void. (See case of Evans v. Wilder, 7 Mis. R. 359; Evans v. Ashley, Id. 177; Anderson v. Brown, 9 Ham. 151; Allen on Sheriffs, p. 57; Gwyne on Sheriffs, 38.)

If the levy made on the 10th of May, 1844, commencing at the N. W. corner, was valid, it must have been disposed of before any other levy or any change amounting to a new levy could have been made. (Bryan v. Bridge, 6 Tex. R. 137, 142.)

II. The next error assigned is the refusal of the Court to permit the deed of the Sheriff to be read as evidence to the jury.

We submit that if the Court did not err in excluding this addition made by the Deputy, there could have been no error in excluding the deed. For it would then appear that the levy and deed would not correspond; for the levy was on the N. W. corner and the deed is for a tract on the N. E. corner.

Besides it is submitted that the Sheriff could not levy upon and sell a part of a tract of land. (Howard v. North, 5 Tex. R. 314, 315.) Least of all could the levy be indefinite as to the amount and the shape of the tract to be sold. In this instance the tract to be offered under the levy might have assumed any shape whatever. The return of a levy on land must describe it with certainty or it will be void. (Felch v. Pinckard, 4 Scam.; see also U. S. Digest Vol. 2, p. 338, Art. 542; Gwyne on Sheriffs, 308.)

The appellees having introduced the levy as a muniment of their title, and the levy being vague and uncertain, and being on a different part of the tract from that sold, we contend that plaintiff is barred by this evidence and that it shows he has no right to recover.

It will be seen by reference to the record that Kidder Walker, the agent who bought the land, was the attorney for the plaintiff in the execution under which it was sold.

WHEELER, J. There can be no question that the Sheriff's

deed, though incomplete, (wanting a seal,) and the return up-
on the execution, evidenced a sale of the land under the exe-
cution, and a purchase by the plaintiff.    But the former and
a part of the entry of the levy were excluded on account of the
apparent repugnancy in the entry of the levy.    And the ques-
tion is whether they were rightly excluded.    The first entry of
the levy upon the execution showed a levy upon the North-
West corner of the league.    But the entry immediately below,
evidently made afterwards, stated that it was the North-East
corner that was to be sold ; and the instrument delivered by
the Sheriff to the purchaser as a conveyance evidenced a sale
of the North-East corner.    It was the right of the officer to
amend and correct his entry of the levy.    But it is objected
that the last entry is in a different handwriting, with different
ink and is without date.    The signature to the entry appears
to be in the same handwriting as that which precedes it.    The
difference in the ink renders it probable merely that it was
made at a different time ; and it is evident from the manner
of the entry that it was made subsequent to the first entry ;
as it is natural to suppose it would be if intended as an amend-
ment of it.    There is, therefore, nothing of a suspicious char-
acter in these circumstances.    But the entry is without date.
If an amendment merely of the previous entry, as it appears
to have been, it was not necessary that it should have been
dated.    In the case of Howard v. North, (5 Tex. R. 290,) it
was said the Act (of 1842) "does not direct the manner in
which the return of the officer shall be made, or what facts
shall be stated ;" and it was held that the levy need not be
separately signed.    It was sufficient that the return, of which
it was a part, was signed by the officer.    "Nor does the
"statute (it was said) impose upon the purchaser the necessity
"of proving by the return, in writing, or by parol evidence,
"that the officer has not deviated in his acts, from the mode
"prescribed by the statute, for the execution of his authority."
(Id. 307.)    The entry in question was the act of a public offi-
cer, in the performance of his duty, and the presumption, un-

til the contrary appears, must be that it was made in proper time. To require the plaintiff to prove that it was so made, would be to require him to prove that the officer had not deviated from the line of his duty; which the law presumes without proof. And to reject this portion of the return, on the assumption that it was an interpolation, made after the advertisement of a different part of the league, and the date of the letter of the defendant in execution, recognizing the levy and giving his assent to the sale of the land previously advertised for sale, would be to suppose the officer to have been guilty of a gross fraud upon the defendant in execution; and this too, when the fairness of his conduct in the levy and sale had not been impeached. If fraud will not be presumed but must be proved, even to affect a party whose interest would be promoted by it, much less will it be presumed of the acts of a public officer, who had no interest to subserve by a departure from the line of his duty. It is material to observe, that, though the defendants had pleaded specially their grounds of defence to the action, there was no averment in the answer, in any manner impeaching the plaintiff's title for fraud or otherwise; nor was it impeached by any attempt or offer to prove that the levy, advertisement and sale were not consistent, open and fair in every particular. Had the plaintiff's title been impeached as fraudulent in these particulars, and had there been evidence tending to cast suspicion upon it, explanation might have been required. Some evidence might have been required to prove that the land sold, was the same referred to in the letter of the defendant in execution, as having been advertised for sale. But there was nothing in the pleadings to apprise the plaintiff of the necessity of coming prepared with such evidence, and nothing in the proof to cast suspicion on the fairness of the sale. And the mere omission of a date to an amendment of the entry of the levy, which, there was no reason to suppose was not made in proper time, was not sufficient to warrant its rejection on the assumption that it was fraudulently made. If a fraud had been intended,

it is not unlikely that an alteration would have been made in the first entry by obliterating the evidence of the levy, if in truth it was upon different land from that sold. But the execution with its indorsements had been matter of record in the county for years. The fairness of the sale had never been questioned by motion to quash the return upon the execution, or otherwise. It had been in no way impeached. And we think the objection to the return first raised upon the trial, should not have been favorably entertained. It is a very different case from the alteration of a private instrument by a party to it.

If on the production of such an instrument, it appears to have been altered, it is incumbent on the party offering it in evidence to explain this appearance. For the instrument is supposed to have been intended to express the agreement of the parties, solemnly adopted as such, and attested by the signature of the party engaging to perform it. Any alteration, therefore, which makes it speak a language different in effect from that which it originally spoke, destroys its identity, and its legal virtue, for it is no longer the agreement which the party undertook to perform.

An agreement to be binding must have the assent of both the contracting parties; and, consequently, cannot have legal validity if altered by one party without the concurrence of the other. Hence, every alteration on the face of the instrument which evidences the agreement, renders it suspicious; and this suspicion the party claiming under it, is ordinarily held bound to remove. (1 Greenl. Ev. Sec. 564, 568.) It was probably upon this principle that the evidence in this case was excluded; not adverting to the distinction between the alteration of a private instrument by one of the parties to it, and the alteration by a Sheriff or other officer of his entries made to evidence his official acts, which it is every day's practice to admit, by way of amendment of his returns; and which cast no suspicion upon the fairness and truthfulness of the returns themselves.

It is further objected to the entry in question, that it was

not signed officially; that is, that the deputy did not sign the name of his principal. It was signed by the same officer, as Deputy Sheriff, who made the sale, and who signed the return officially. He was an officer known to the law, (1 Stat. Republic, p. 181, Sec. 6, *9 et seq.*, Act of 20th Dec. 1836,) and it was not indispensable to the validity of his official acts that they should be attested in the name of the Sheriff. Where the office of Deputy Sheriff is recognized by the statute, it has been held that their acts should be certified in their own name, and not in that of the Sheriff. (4 Verm. 616.) There was no statute, as there is in some of the States (1 Wash. 159,) requiring the deputy to add the name of his principal; and the signing of his own name with the addition of his proper official designation, was sufficient. Besides, as we have seen, it was not necessary that the levy should have been separately signed by the officer. It was sufficient that the return was signed officially. (5 Tex. R. 307.)

It is not necessary to discuss the other objections urged to the regularity of the sale. The letter offered in evidence, admitted to have been written by defendant in execution, contained an express authority to sell the land previously levied on and advertised for sale, without appraisement. And this was sufficient to cure the alleged irregularity of the sale. A parol authority by the defendant in execution, to the Sheriff to sell designated lands, though the sale would not have been otherwise regular, will cure the irregularity. (1 B. Munroe, 237.) We are of opinion that the Court erred in excluding the proposed evidence; and that the judgment be reversed and the cause remanded.

Reversed and remanded.