### Hiram Morrison v. Sam Lazarus.

No. 449.—Decided June 22, 1896.

1. Homestead—Liens Against.

Where homestead is established on 200 acres, out of a larger tract against which a lien for purchase money exists, the homestead cannot be made liable for the

purchase money until the lien upon the rest of the tract is exhausted. Any arrangement after the designation of the homestead, which, though indirectly, has the effect of permitting the entire debt for purchase money to be enforced against the homestead while a debt for borrowed money is given a lien on the remainder of the tract, is in violation of the constitution.

2. Same—Fact Case.

G., who owned a note for $8047.50 for purchase money of 1380 acres of land, having established his homestead on 200 acres, gave a mortgage upon the remainder of the tract for $16,500, made up of about $6000 borrowed money and the amount of the purchase money note, which last sum was paid to the holder but the note by agreement was not extinguished but transferred to the mortgagee for additional security. G. conveyed the 1180 acres to M., subject to the mortgage, and also the 200 acres of homestead. The mortgagee sued G. on his note for $16,500, and foreclosed on, sold and bought in the 1180 acres of land, for $10,000 credited on the judgment. L. then got from the mortgagee the original purchase money note, (payment of which the mortgagee company guaranteed, L. giving therefor his note to them for the same amount), and brought suit against G. therefor, making M. a party and seeking foreclosure on the homestead. Held:

(1.) L. took the note subject to any defense that could be made against it in the hands of the mortgagee.

(2.) The transaction, taking both judgments together, gave the debt for borrowed money a first lien on the 1180 acres and threw the whole burden of the purchase money note on the homestead.

(3.) The proper rule should be to require the holder of the purchase money lien to resort primarily to the remainder of the tract for his security, treating the homestead as secondary security, or guaranty, in case the vendor's lien was not satisfied out of the remainder of the tract.

(4.) Without resorting, either previously or in this suit, to the remainder of the tract as security for the lien, the holder of the purchase money note was not entitled to foreclose against the homestead.

(5.) If the foreclosure on and sale of the 1180 acres merged and extinguished the vendor's lien as to that part of the land, rendering it impossible to now subject it to the purchase money note, the lien against the homestead would be discharged thereby.

ERROR to Court of Civil Appeals for Third District, in an appeal from Dallas County.

The opinion states the facts.

J. D. *Thomas,* for plaintiff in error.—The Western Mortgage and Investment Co., Limited, acquired by virtue of the Rawlings note a lien only by conventional subrogation, and only to the extent contracted for. And not having contracted for a lien on the 200 acres claimed by Morrison, it acquired none. Fievel v. Zuber, 67 Texas, 279; Dillon v. Kaufman & Runge; 58 Texas, 705; Wade v. Wade, 36 Texas, 529; Daniel, Neg. Inst., sec. 701.

"Said land," in the subrogation clause of the trust deed, can mean only the 1180 acres described in that instrument. Brown v. Gilman, 4 Wheat., 290.

The Mortgage Co. is confined to the lien on the 1180 acres, by having openly given the subrogation clause that construction from its date, 1888, to the time it transferred the note to Lazarus, October, 1893. Railway v. Johnson, 74 Texas, 256.

If said Mortgage Co. had a lien on the 200 acres at all, by virtue of the Rawlings note, it had a like lien, by virtue of the same note, on

the 1180 acres covered by its trust deed, both mature at the institution of its suit, December 26, 1891. And as said company sued in that case for the identical money represented by the Rawlings note, and to foreclose a lien to secure that money, it could not split its foreclosure and reserve the 200 acres, then owned by George, to sustain a subsequent suit for foreclosure against Morrison, after he had purchased the 200 acres for value. But having foreclosed on the 1180 acres alone, in that suit, it, as well as plaintiff, is precluded from the foreclosure here sought. Foster v. Wells, 4 Texas, 101; Vieno v. Gibson, 85 Texas, 434; Ward v. Green, 30 S. W. Rep., 864; Hermann, Estoppel and Res. Judicata, sec. 132; Freeman, Judgts., 240; Jones, Mort., 954, 1459, 1463; Mascarell v. Riffour, 51 Cal., 242; Rains v. Mann, 68 Ill., 264; Wiltse, Mort. Foreclosure, secs. 262, 272, 494.

If the mortgage company had a lien on the 200 acres at all, it had a like lien on the 1180 acres prior and superior to the lien of its trust deed: and by reason of the conveyance to Morrison, he has the right to have the 1180 acres first sold in satisfaction of the Rawlings note. But as the mortgage company bought in the 1180 acres under its own foreclosure and plaintiff has not made said company a party, but has selected the attorneys of that company who could not take a decree against it, to prosecute this suit, and has cut off Morrison from his right aforesaid, for this reason there can be no foreclosure upon Morrison's 200 acres. 24 Am. & Eng. Enc. Law, 722; Miller v. Rogers, 49 Texas, 417; Durrell v. Farwell, 30 S. W. Rep., 542; Eq. Mort. Co. v. Kempner, 84 Texas, 105; Krause v. Pope, 78 Texas, 486; Ayres v. Cayce, 10 Texas, 108; Jones, Liens, 1117.

The mortgage company had two liens on the 1180 acres, the prior and superior lien by virtue of the Rawlings note, the junior and inferior lien by its trust deed. By foreclosure of its inferior lien and the purchase of the 1180 acres under that foreclosure, it extinguished not only the lien of the Rawlings note, but the debt evidenced by that note. The bid of $10,000 for the 1180 acres was a bid for the equity of redemption, and operated an extinguishment of the Rawlings note. It was in law, a bid of the amount of the Rawlings note, plus $10,000. So the Rawlings note was paid and discharged, and cannot serve as the basis of a foreclosure in this suit. Vieno v. Gibson, 85 Texas, 434; Jones, Mort., sec. 953, 1459, 1463; Mines v. Moore, 41 Ill., 275; Robbins v. Swain, 68 Ill., 198; Rains v. Mann, 68 Ill., 264; Cox v. Wheeler, 7 Paige, N. Y., 248; Hughes v. Frisby, 81 Ill., 188; Whitehead v. Fisher, 64 Texas, 641; Weiner v. Heintz, 17 Ill., 259; Smith v. Smith, 32 Ill., 198; Cannon v. McDaniel, 46 Texas, 304; Miles v. Kinner, 42 Mich., 181; Poweshiek County v. Riley, 36 Ia., 244; Bank v. Chester, 11 Pa., 182; Speer v. Whitfield, 10 N. J. Eq., 107; Biggins v. Brockman, 63 Ill., 316; Booker v. Anderson, 35 Ill., 66; McLean v. Presley, 56 Ala., 214.

The distinction in such cases is this: When a third party is purchaser the lien is released. When the mortgagee is the purchaser, the debt is

extinguished. The judgment against George for $22,451.40, included the identical money represented by the Rawlings note. That judgment extinguished said note. That George, by collusion with plaintiff, permits judgment to go against him for $11,266.50, on a note extinguished three years before, constitutes no possible ground for foreclosure upon the 200 acres conveyed by George and wife to Morrison, for full value, long before plaintiff pretends to have acquired said note. The note sued on was merged in and extinguished by the judgment of March 29th, 1892. Black, Judgts., sec. 75; Ins. Co. v. Newton, 14 Atl. Rep., 756.

Decree for balance on mortgage bar to suit on bond for same debt. Johnson v. Templeton, 60 Texas, 238; Ins. Co. v. Jones, 8 Fed. Rep., 303; Wiltse, Mort. Forec., sec. 329; Rev. Stats., 3162; Huston v. Musgrove, 35 Texas, 595; Morrison v. Morrison, 38 Iowa, 74; State v. Lake, 17 La., 215; Seligson v. Mitcham, 74 Texas, 575; Colebrook, Col. Secy., 2; Freeman, Judgts., 215-216-240; Hermann, Est. & Res. Jud., secs. 119-124; Wayman v. Cochran, 35 Ill., 152; Dan., Neg. Inst., 1284; Hogg v. Charleton, 25 Pa. St., 200; Ober v. Gallagher, 93 U. S., 208.

To permit the foreclosure sought in this case would be equivalent to permitting George to make a donation of the 200 acres to said company, or to plaintiff, three years after he and his wife for value conveyed it to Morrison, and the foreclosure should be denied.

The court erred in decreeing foreclosure upon Morrison's land, because, (1) The mortgage company never had a lien on it; (2) The right was determined by the former adjudication; (3) If such lien existed it was discharged by the release of the 1180 acres from it; (4) The Rawlings note was discharged by the purchase of the 1180 acres by said company; (5) The Rawlings note had been extinguished by judgment for the money represented by it; (6) Morrison is protected by the defenses George should have made, and could not be deprived of them by collusion among plaintiff, the mortgage company, and George.

*Alexander, Clark & Hall,* for defendant in error Lazarus.—The mortgage company acquired the legal title to the $8047.50 vendor's lien note, and held the same as security, collateral to the security afforded by the trust deed lien on the 1180 acres of land. The express contract lien retained in the note, as well as in the deed, passed to the mortgage company by the endorsement and transfer of said note to said company, which is described as the owner and holder of said note, by assignment. Silliman v. Gammage, 55 Texas, 370; Ellis v. Singletary, 45 Texas, 36; Seeligson v. Mitcham, 74 Texas, 575; Waldron v. Zachary, 54 Texas, 504; DeBruhl v. Maas, 54 Texas, 472; Dibrell v. Smith, 49 Texas, 479; Jones on Liens, vol. 2, sec. 1116; McAlpin v. Burnett, 19 Texas, 500; Freeman on Judgmts. (3d ed.), sec. 229.

There was no subrogation clause in said trust deed, but the recitals in the blank space left for "subrogation and other facts," express notice that the vendors' lien retained in said note, and retained in the warranty

deed from Rawlins to George, existed, not by subrogation but express contract and by transfer and assignment of said note.

Appellant was chargeable with all notice afforded by the line of title, and not only as to the knowledge thereby afforded but as to all means of knowledge that could have been acquired in the reasonable exercise of diligence. This is true as to equitable lien, and is more strict as to express contract lien. Cordovo v. Hood, 17 Wall., U. S., 1; Bacon v. O'Connor, 25 Texas, 213; Brinksman v. Jones, 44 Wis., 498; Maupin v. Emmons, 47 Mo., 304; Witczniski v. Everman, 51 Miss., 84.

There is error in the statement that the Rawlins note matured December 26, 1891, and with this error, falls the whole assignment, because the said note was not due and could not have been foreclosed at the time of the institution of the original suit. It covered in part other land than was embraced in original suit; which "other land" was sought to be sold in accordance with the intent of the parties to the contract. Wiltse, Mortgage Foreclosure, secs. 42, 265, 262 and end of sec. 272; Freeman on Judgmts., secs. 223 and 229.

The mortgage company had a lien on the 1180 acres, secured by a deed of trust lien, and on the 1380 acres secured by the vendor's lien note, all of which liens were superior to any right acquired by Morrison under purchase of both tracts at the same time during the pendency of the first suit. The mortgage company did sell, as contemplated by legal construction of the contract, the 1180 acres first, which operated as a merger of the liens, in so far as the 1180 acres is concerned. Appellee, Lazarus, as assignee of the mortgage company, certainly acquired the rights of the mortgage company and has now the right to subject the residue of the land towards the payment of the debt in a procedure on the collateral note. Appellant, Morrison, has the right to pay appellee's debt and prevent foreclosure; until he does this he has no right to complain. Silliman v. Gammage, 55 Texas, 371; Kempner v. Comer, 73 Texas, 202; Jemison v. Halbert, 47 Texas, 190; Robinson v. McWhirter, 52 Texas, 201; Decatier v. Walker, 137 Mass., 141; Jones on Mort. (Sec. Ed.), vol. 1, secs. 848, 856, 857; Hosfes v. Ahustedt, 83 Mo., 473; Construc. Co. v. Railway, 46 Iowa, 406.

The first foreclosure sale passed title to 1180 acres but left a deficiency judgment of about $13,000, for which the 200 acres are liable in this proceeding on the collateral note. George could not complain as to this, neither can Morrison, who can assert no more defense than George could. On a foreclosure sale the lien is extinguished on the land sold and the debt is extinguished only to the amount of the purchase price paid on the judgment.

The collateral note sued on was not merged in and extinguished by the judgment of March 29, 1892, because the said note was not sued upon and could not have been sued upon because it was not due, and under the letter and spirit of the contract was not subject to suit until the other security was exhausted. McLaughlin v. Hart, 46 Cal., 638;

Ins. Co. v. Gleason, 62 Iowa, 277; Armitage v. Toll, 64 Mich., 412; Chapman v. Lester, 12 Kan., 582, 595.

To permit the foreclosure awarded by the trial court is equivalent to effectuating the evident intention of H. H. Rawlings, W. N. George, and the mortgage company, as disclosed by the records affecting the title to the property in question, of all of which Morrison, appellant, was chargeable with notice, and had actual notice. In the purchase of the land subject to the incumbrance, Morrison probably valued the user of the land, pending foreclosure, a full equivalent for the consideration paid by him, and acting under advisement of his attorneys, is conducting a speculative defense.

On motion for rehearing counsel submitted,—

Ist. The homestead attribute never did attach to the two hundred acres in favor of George or anyone claiming under him, as against the vendor's lien. The homestead claim or interest was not only subordinate to and dependent on the payment of the vendor's lien note, but as respecting the same was entitled to no consideration or preference whatever. Warhmund v. Merritt et al., 60 Texas, 27; Dillon v. Kaufman, 58 Texas, 707; Clements v. Lacy, 51 Texas, 150; Shepperd v. White, 16 Texas, 103; Farmer v. Simpson, 6 Texas, 303; DeDruhl v. Maas, 54 Texas, 473.

The vendor's lien in this case operated against all the land and every part thereof, and any release, actual or constructive, by the mortgage company of 1180 acres, or any part of the 1380 acres, did not impair its lien on the 200 acres. In addition to the foregoing authorities: Wiltse on Mort. Forec., sec. 514; Chapman v. Lester, 12 Kan., 572; Searle v. Chapman, 121 Mass., 19.

The purchase of the 1180 acres by the Mortgage Company, it being then the legal owner of the $8047.50 note, operated to invest the Mortgage Company with the full title to the land, free from any lien. Vieno v. Gibson, 85 Texas, 434; Silliman v. Gammage, 55 Texas, 370. This was a constructive release, if not a legal discharge of said land from the vendor's lien on same, just as much so as if the mortgage company had recited the facts, and by a release absolved said 1180 acres expressly from the vendor's lien thereon.

The vendor's lien upon the 1180 acres was not foreclosed, but was extinguished on that tract by virtue of the mortgage company, the purchaser, being the legal owner and holder of the note, and the interests and evident intention of the parties being that this result should follow. Vieno v. Gibson, 85 Texas, 434; Silliman v. Gammage, 55 Texas, 371; Pomeroy, Eq. Juris., vol. 2, sec. 789, 790. If this is not true, as holder of the vendor lien note, defendant in error had the right to foreclose on the 1380 acres or any part thereof.

The motion for rehearing was overruled.

BROWN, ASSOCIATE JUSTICE.—W. N. George purchased from H. H. Rawlings 1380 acres of land for which he gave his note for $8047.50, dated November 19, 1885, due November 19, 1893. George occupied 200 acres of the tract as a homestead, and while he was so occupying it on the 23d day of October, 1888, borrowed from the Western Mortgage & Investment Company $16,500, giving his note therefor, which matured prior to the 26th day of December, 1891, and to secure this note George executed to the Western Mortgage & Investment Company a deed of trust on 1180 acres of the land, not including his homestead. The principal and interest of the note given by George to H. H. Rawlings were embraced in the note given by George to the Mortgage & Investment Co., and he received from the investment company the difference between the principal of the said note and unpaid interest up to the date when he borrowed the money from the said investment company and the amount of the note executed to it, being something over $6000. The Mortgage & Investment Company, with the money borrowed by George, paid off the note to Rawlings and received the same with an endorsement thereon, showing that it was transferred by Rawlings without recourse.

The deed of trust included only the 1180 acres of land, describing it by metes and bounds and calling for the 200 acres as the homestead of George on two of its lines. No other land was described in the deed of trust than the 1180 acres. In the deed of trust was a space thus designated: "This space is to be used to secure subrogation of the lien and recite facts where a vendor's or other lien is paid off by the note secured hereby." In the space was written: "It is expressly agreed that the taking of this trust deed shall in nowise impair the vendor's lien existing upon the said land as evidenced by the note of the said W. N. George for $8047.50 executed to H. H. Rawlings and transferred to the Western Mortgage & Investment Company, Limited, and now owned by the said company." It was proved by J. B. Simpson, who was trustee in the deed of trust, that when the said transaction occurred it was agreed between him and George that the note made to Rawlings should be held by the Mortgage & Investment Company as collateral to secure the note made to it for $16,500, which agreement was expressed in the deed of trust. To the admission of this testimony the defendant Morrison objected, upon the ground that the deed of trust was the best evidence of the agreement, and second, that the evidence tended to vary the terms of the agreement expressed in the deed of trust, which objections were overruled and the testimony admitted.

December 26, 1891, the note made by George to the Mortgage & Investment Company having fallen due and being unpaid, suit was filed upon it by the said Mortgage & Investment Company against George, and praying a foreclosure upon the 1180 acres of land, but not embracing the 200 acres, not declaring any right against the 200 acres, nor asking any relief with regard thereto.

During the pendency of the suit above stated, George and wife, on the 20th day of February, 1892, by warranty deed to appellant Morrison, conveyed the 1180 acres of land, expressing that it was conveyed subject to the deed of trust, and also conveyed to Morrison the 200 acres, the homestead, the consideration of the conveyance of the lands being a note for $1500 and $1000 paid by Morrison for George. On March 29, 1892, the Mortgage & Investment Company obtained a judgment against George for $23,451.40, foreclosing the lien of the deed of trust upon the 1180 acres of land and in July, 1892, the 1180 acres of land was sold under and by virtue of the said judgment and bought in by the Mortgage & Investment Company at the price of $10,000, which was credited upon the judgment.

Lazarus, the defendant in error, gave his own note to the Mortgage & Investment Company for the amount of the principal, $8047.50, of the note made by George to Rawlings and took from the mortgage company a transfer of the latter note and a guaranty that it would be paid. Suit was instituted in the District Court of Dallas County upon the note made by George to Rawlings, George and Morrison, with others, being parties defendant, praying for judgment against George for the amount of the note and a foreclosure of the vendor's lien upon the 200 acres of land, the homestead of George, which had been conveyed to Morrison. The deed of trust given by George to the Mortgage & Investment Company was recorded in Dallas County prior to the sale made by George to Morrison. Trial was had before the court without a jury and judgment was rendered against George by default for the full amount of the note sued upon and interest, and against Morrison foreclosing the lien upon the 200 acres of land aforesaid. Morrison appealed to the Court of Civil Appeals, which affirmed the judgment of the District Court

Lazarus is in no better position in this case than the Western Mortgage & Investment Company would be if it were plaintiff herein. If he really owns the note sued upon, the manner in which he acquired it makes it subject in his hands, to all defenses that could be made against it in the hands of the Western Mortgage & Investment Company and imposes upon him the same requirements that the law would impose upon the Mortgage & Investment Company as a condition precedent to enforcing the lien upon the homestead. For the purpose of this case, we will assume that Morrison must stand in the shoes of George and is not entitled to make any defense that George could not make if he were still the owner of the land and occupying it as a homestead.

The effect of the transaction between George and the Mortgage & Investment Company, as interpreted and enforced by the judgment of the District Court in this case in connection with the judgment in the former suit foreclosing the deed of trust upon and sale of the 1180 acres thereunder, is to give to the money borrowed by George from the Mortgage & Investment Company in excess of that which was used to take up the vendor's lien note, a lien upon the 1180 acres of land superior to

that of the vendor's lien note made by George to Rawlings and the money embraced in the $16,500 note which represents the vendor's lien note, is given but a secondary lien upon the 1180 acres of land, and in that way the burden of the entire note for $8047.50 is imposed upon the homestead. Plainly stated, the agreement thus construed would be the equivalent of an arrangement as follows: Suppose that George had borrowed the $16,500 of the Mortgage & Investment Company, with a part of which sum it, at his suggestion, took up the vendor's lien note with a transfer thereof to it, and instead of giving one note for the $16,500, as in this case, the Investment Company held the original vendor's lien note, and took from George a note for the excess over the amount paid for the vendor's lien note, and to secure the original note and the note given for such excess, suppose George had given a deed of trust upon the 1180 acres of land with the specific agreement that the vendor's lien of the $8047.50 note should be retained upon all the land, but that the note given for the money borrowed in excess of that which was used to take up the vendor's lien note should have a prior lien upon the 1180 acres. The District Court must have construed the agreement in this case to mean what is expressed in the supposed case stated above, otherwise it could not have allowed the proceeds of the sale of the 1180 acres to be exclusively applied to the payment of the money embraced in the note given by George to the Mortgage & Investment Company not used to discharge the lien, and at the same time refuse to require the vendor's lien to be foreclosed upon the 1180 acres before subjecting the homestead to the original note. If the District Court held the 1180 acres subject first to the purchase money embraced in the note, it must have applied the sum bid for it to the discharge of the purchase money, or that the land was still subject to the vendor's lien, and that it must be exhausted before the homestead can be resorted to. In so far as priority was given to the borrowed money over the vendor's lien note, the agreement thus understood would be in conflict with article 16, section 50, of the Constitution, because it would virtually create a new lien upon the homestead by adding a burden to which it was not before liable, in that, the 200 acres would be made liable for the entire purchase money debt, whereas it was in the first place only liable for its proportionate part thereof.

We do not understand that counsel for the defendant in error claim this to be the proper construction of the agreement, yet it cannot be denied that it is the effect produced by the construction placed upon the contract by the court. The best case which can be made for the plaintiff Lazarus upon the facts is, that the vendor's lien was to be preserved upon the whole 1380 acres of land, the 1180 acres to be primarily liable for the $8047.50 as represented in the $16,500 note, and that the original note given by George to Rawlings should be held by the Mortgage & Investment Company as collateral security for the payment of that sum by the 1180 acres, the homestead being thus made secondarily liable

for the purchase money of the land. By this arrangement the homestead became surety or a guarantor that the 1180 acres would sell for a sum sufficient to discharge that portion of the note secured by the deed of trust which represented the purchase money of the entire tract. Durrell v. Farwell, 88 Texas, 98, and authorities there cited; Robertson v. Gee, 1 Ves., Sr., 251.

The homestead occupying towards the remainder of the tract the attitude of guarantor or surety, it would be necessary for the party seeking to enforce the lien to first exhaust the 1180 acres before resorting to the homestead. At least, it would be required, if the primary security had not been first exhausted, that it should in this proceeding be brought before the court and the lien foreclosed so as to subject the 1180 acres first, and by the decree of the court the homestead might be sold if the other land did not sell for enough to pay that part of the note and thus be made secondarily liable. Robertson v. Gee, cited above; Brandt, Suretyship & Guaranty, secs. 98, 99, 100; Evans v. Bell, 45 Texas, 553.

It follows that before Lazarus could subject the homestead to the payment of the vendor's lien debt under the circumstances of this case, resort must first be had to the 1180 acres as the primary security or he must have sought in this suit to subject it first, and not having done so, the plaintiff shows no right as against the defendant Morrison to have a decree foreclosing that lien upon the 200 acres which had been set apart as the homestead of George.

It is claimed on behalf of the defendant in error that by virtue of the foreclosure—in the prior suit against George—of the deed of trust upon the 1180 acres and the purchase of it by the Mortgage & Investment Company the vendor's lien was merged in the title which the Investment Company acquired by its purchase, and that therefore it cannot be now subjected to the payment of this note. If this be true, it must necessarily follow that by the manner in which the Mortgage & Investment Company dealt with the primary security in not foreclosing the vendor's lien thereon, it has put it in such a condition that it cannot be subjected to the payment of the debt for which the homestead stands as surety or guarantor, therefore the lien upon the homestead was discharged. Durrell v. Farwell, cited above. If, however, the vendor's lien for the amount of money embraced in the $16,500 note which represents the purchase money of the land and which held a prior lien upon it was foreclosed upon the 1180 acres, the land having been sold for a sum more than sufficient to discharge the amount due upon the purchase money of the entire tract, the purchase money part of the debt and the lien upon the homestead would be discharged.

Under no phase of this case can Lazarus enforce the vendor's lien upon the 200 acres, the homestead of George. We will restate our conclusions as follows: If the vendor's lien upon the 1180 acres was not foreclosed or extinguished by the proceedings in the former suit, then

Lazarus cannot have judgment of foreclosure against the homestead in this suit because he has not made the Mortgage & Investment Company a party and sought to foreclose the vendor's lien first upon the 1180 acres and alternately upon the 200 acres, which he might have done but has not sought to do in this proceeding. If the vendor's lien upon the 1180 acres was not foreclosed in the former suit, but by the foreclosure of the deed of trust and the sale and purchase of the 1180 acres under that judgment by the Mortgage & Investment Company, the vendor's lien became merged in the title and was thereby destroyed, then Lazarus cannot have judgment in this case foreclosing a vendor's lien upon the homestead, because the Mortgage & Investment Company has by its dealings with the 1180 acres, the primary security, placed it in a condition that the lien cannot be enforced thereon and has thereby discharged the homestead, which only stood as surety for the other land. Again, if the vendor's lien which existed to secure that part of the note given by George to the Mortgage & Investment Company, which represented the original note to Rawlings, was foreclosed upon the 1180 acres of land in the former suit against George, then upon the purchase of the said 1180 acres by the Mortgage & Investment Company under that judgment the amount of the bid which was more than sufficient to have settled the original Rawlings note must be entered as a credit to the purchase money as represented in the judgment, and that part of the debt being paid which held a prior lien upon the land and for which the homestead stood as surety would discharge the 200 acres and Lazarus would not be entitled to a judgment foreclosing the lien thereon.

The court below erred in holding that the plaintiff showed a right to resort to the homestead for the payment of this debt, and the Court of Civil Appeals erred in affirming that judgment.

It appearing to the court that the plaintiff, under the facts of this case, has no right of recovery against the defendant Morrison, the judgments of the District Court and the Court of Civil Appeals are reversed as to Morrison, and such judgment will here be entered as should have been entered by the Court of Civil Appeals. It is therefore ordered that the plaintiff Lazarus take nothing by his suit as against Hiram Morrison, and that the defendant Hiram Morrison go hence without day discharged and recover of the plaintiff Sam Lazarus all costs in this behalf expended in all of the courts.

*Reversed and rendered.*